■ JOAN SAGE, Respondent, v FAIRCHILD-SWEARINGEN CORPORATION, Defendant and Third-Party Plaintiff-Appellant-Respondent; BROOME COUNTY AVIATION, INC., Third-Party Defendant; COMMUTER AIRLINES, INC., Third-Party Defendant-Appellant.—Main, J. Cross appeals from a judgment of the Supreme Court in favor of plaintiff, entered November 6, 1985 in Tompkins County, upon a verdict rendered at Trial Term (Swartwood, J.).

Plaintiff was employed by third-party defendant Commuter Airlines, Inc. (Commuter) as a ticket agent and, as such, was assigned the additional duty of loading and unloading baggage from Commuter's planes upon their arrival at and departure from the Tompkins County Airport. At about 9:00 P.M., on October 21, 1980, plaintiff finished unloading baggage from one of Commuter's planes. The plane was manufactured by and sold to Commuter by defendant. Plaintiff, with some

assistance from one of the crew members, had lowered the baggage to a baggage cart which she had placed directly under the cargo door of the plane. Upon leaving the cargo area, plaintiff assumed a sitting position on the floor of the baggage compartment with her legs dangling preparatory to jumping to the ground some 4½ to 5 feet below. Because she had left the baggage cart directly below the cargo door, it was necessary to push or pull herself sideways so as to miss the cart, and to accomplish this she grabbed the frame of the compartment door. As she did so, the middle finger of her left hand or the ring thereon caught on the aft hanger inside the compartment opening and as a result, plaintiff's finger was amputated near the distal joint. Surgery and extensive treatment followed. The aft hanger was a device used to hold one end of a portable ladder and was located inside the plane near the cargo compartment opening on the side toward the rear of the plane. It was stipulated at trial that no ladder was used in the unloading process and that there was no ladder aboard the plane.

Sometime later plaintiff commenced an action against defendant, proceeding under theories of negligence and design defect, seeking damages for her personal injuries. Defendant then commenced a third-party action against Commuter* alleging, *inter alia,* that it was Commuter's negligence which caused the accident and seeking judgment against Commuter to the extent that Commuter's responsibility contributed to any judgment obtained by plaintiff. After a trial, the jury, by its answer to special questions submitted to it, found that the aft hanger involved was a replacement part; that it was of substantially the same design as the original designed by defendant; that the design of the hanger was defective and that the defect was a proximate cause of the accident and the resulting injury; that plaintiff was free of any negligence; that plaintiff was entitled to $185,000 for her injury and that the percentage of responsibility chargeable to defendant was 75% and to Commuter was 25%. Defendant and Commuter appeal from all parts of the order entered thereon. Defendant's primary contention on appeal is that the trial court applied the wrong standards.

Insofar as relevant to our review, the only issues presented to the jury were contained in the first three special questions:

---

* Commuter is the successor to third-party defendant Broome County Aviation, Inc. It was stipulated at trial that Broome County Aviation, Inc. no longer exists and for purposes of this lawsuit, Commuter and Broome County Aviation, Inc. are one and the same.

(1) was the aft hanger a replacement part; (2) was the aft hanger on October 21, 1980 of substantially the same design having the same characteristics of the aft hanger originally designed by defendant; and (3) was the design of the aft hanger defective, which defect was a proximate cause of the accident and plaintiff's injury. Considering the aft hanger as the "product", as we must, in view of the evidence and the charge, it must be concluded that there was more than a substantial alteration; indeed, there was a complete substitution or replacement of the original hanger manufactured and designed by defendant and, concededly, the replacement was not manufactured or designed by defendant *(see, Smith v Johnson Prods. Co.,* 95 AD2d 675).

It is well established that: "a manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries" *(Robinson v Reed-Prentice Div.,* 49 NY2d 471, 475). *(See also, Lovelace v Ametek, Inc.,* 111 AD2d 953, 955, *lv denied* 67 NY2d 601.) Although a manufacturer is under a duty to design and manufacture a product which is safe at the time of sale, it is not responsible for injuries caused by subsequent modifications by another however foreseeable such modifications may have been to the manufacturer *(Robinson v Reed-Prentice Div., supra,* p 481).

There must be a reversal. The trial court applied the incorrect standard for the reason that *Robinson* instructs us that there can be liability against the manufacturer if the original product is modified in such a manner as to not substantially alter that product. It does not speak to replacement of the product but only to unsubstantial alteration. We find no authority or valid reason to extend the rule, nor did the court in *Hansen v Honda Motor Co.* (104 AD2d 850). To extend the concept would expand the scope of a manufacturer's duty beyond all reasonable bounds and would be tantamount to imposing absolute liability on manufacturers for all product-related injuries *(see, Robinson v Reed-Prentice Div., supra,* p 481).

Moreover, even assuming the *Robinson* rule was properly applied in the case at bar, plaintiff's case must still fail. The burden of establishing that the replacement product was of substantially the same design and had substantially the same characteristics as the original was upon plaintiff. Plaintiff's

expert admitted that he had not examined or reviewed the blueprints of the aft hanger furnished by defendant and that the only aft hanger he observed was on another airline's plane and that he observed it from some distance. He did not know how the product was attached, took no measurements and made no calculation as to its yield or tensile strength. Admittedly, the replacement was fabricated by one of Commuter's employees, but who made it and who installed it and precisely what it was made of remain a mystery. On the other hand, defendant's safety program manager and Commuter's director of maintenance testified in detail as to the differences between the original and the replacement copy. The measurements were not the same and the replacement lacked other features of the original. The verdict was clearly against the weight of the evidence.

Judgment reversed, on the law, and complaint and third-party complaint dismissed, without costs. Mahoney, P. J., Main, Weiss, Yesawich, Jr., and Levine, JJ., concur.